UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| RYAN REPASS,<br><br>    Plaintiff,<br><br>v.<br><br>CLARK COUNTY DETENTION CENTER; SHERIFF DOUGLAS GILLESPIE; LAS VEGAS METROPOLITAN POLICE DEPARTMENT; NAPHCARE, INC.; and DR. WOLFF,<br><br>    Defendants. | Case No. 2:13-CV-00237-APG-GWF<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS, GRANTING DEFENDANTS' MOTION TO STRIKE, AND GRANTING PLAINTIFF'S MOTION TO AMEND<br><br>(Dkt. Nos. 6, 9, 24, 28) |

I. **BACKGROUND**

On April 5, 2009, plaintiff Ryan Repass ("Repass") was shot five times by officers of the Las Vegas Metropolitan Police Department ("Metro"). He was shot three times in the left arm, once in the left side of this chest, and once in the back with a shotgun blast. Repass was subsequently detained at Clark County Detention Center ("CCDC") from April 2009 through February 2010 while awaiting trial. Metro operates CCDC.

On October 5, 2011, Repass filed suit in the Nevada state district court. (Dkt. No. 1-1.) He named as defendants CCDC, Clark County Sheriff Douglas Gillespie ("Gillespie") (in his official and personal capacities), Metro, Naphcare, Inc. ("Naphcare"), and Dr. Wolff, a surgeon at University Medical Center in Las Vegas ("UMC") (collectively, "Defendants"). Naphcare is a private entity under contract to provide medical services to detainees at CCDC.

On February 13, 2013, Defendants removed the case to this Court. (Dkt. No. 1.) The sixteen-month period between the filing of the Complaint in state court and removal to this Court seems to have occurred because Repass did not serve process on Defendants until February 1, 2013. (*Id.* at 2.)

Repass pleads three counts under 42 U.S.C. § 1983, alleging violations of the Eighth Amendment's prohibition of cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause. In short, he alleges that Defendants were deliberately indifferent to his serious medical needs. Repass alleges that he received no treatment for the shotgun blast to his back—that the pellets were never removed and the wounds never addressed. This, he alleges, resulted in infection, rash, and ongoing, permanent pain and suffering.

As to his left side, Repass alleges that only part of the bullet was removed, leaving fragments inside his body. He alleges the wound reopened and became infected. Defendants placed him in the CCDC medical unit rather than take him to the hospital. He further alleges that Defendants put him on "improper and ineffective medication which he received sporatically [*sic*] which masked the pain and did not treat or heal the condition." (Dkt. No. 1-1 at 5.)

Concerning his left arm, Repass alleges the three shots were not treated or operated on until December 15, 2009. He alleges he made "desperate pleas in person, in writing and through the CCDC kite[1] system" that went unanswered from April 2009 until his surgery in December 2009. (*Id.* at 6.) He also alleges that there were three entry and three exit wounds in his arm. On the day of the surgery, December 15, 2009, he alleges he was whisked to UMC in Las Vegas at 9:00 a.m. and rushed back to CCDC immediately after the surgery at noon. He contends the immediate return to CCDC "caused unnecessary pain and suffering and was deliberately indifferent to how it would effect [*sic*] his ability to heal and recover." (*Id.* at 7.) To repair his arm, surgeons allegedly inserted a metal plate and several titanium screws. Repass alleges that the post-surgery medications "did not allow the shattered arm to heal, but masked pain causing [Repass] further damage to his arm, which is now permanent, deteriorating and continuing." (*Id.*

---

[1] In this context, a "kite" is a document requesting medical care.

at 6.) Finally, Repass alleges that Naphcare "did not possess the necessary staff, expertice [sic] or training to provide proper and adequate follow-up care" and that Defendants were aware of Naphcare's alleged shortcomings. (*Id.* at 7.)

## II. ANALYSIS

### A. Legal Standard — Motion to Dismiss

A properly pled complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. To survive a motion to dismiss, a complaint must "contain[] enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 696 (internal quotation marks and citation omitted).

District courts must apply a two-step approach when considering motions to dismiss. *Id.* at 679. First, the court must accept as true all well-pleaded factual allegations and draw all reasonable inferences from the complaint in the plaintiff's favor. *Id.*; *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247–48 (9th Cir. 2013). Legal conclusions, however, are not entitled to the same assumption of truth even if cast in the form of factual allegations. *Iqbal*, 556 U.S. at 679; *Brown*, 724 F.3d at 1248. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. Second, the court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 663. Where the complaint does not permit the court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and citation omitted). When the claims have not crossed the line from conceivable to plausible, the complaint must be dismissed. *Twombly*, 550 U.S. at 570.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the [district] court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B. Legal Standard — 42 U.S.C. § 1983

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 provides a mechanism for the private enforcement of substantive rights conferred by the U.S. Constitution and federal statutes. *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). "To state a claim under § 1983, a plaintiff must [1] allege the violation of a right secured by the Constitution and laws of the United States, and must [2] show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

#### 1. Individual Liability

Individuals can be defendants in their official and personal capacities. State officials sued in their official capacity for damages are not persons for purposes of § 1983. *Hafer v. Melo*, 502 U.S. 21, 27 (1991). However, state officials are suable in their official capacities for injunctive relief under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Official-capacity suits filed against government officials are merely an alternative way of pleading an action against the entity of which the defendant is an officer. *See Hafer*, 502 U.S. at 25. As such, "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Center for Bio-Ethical Reform, Inc. v. Los Angeles Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th

Cir. 2008). Accordingly, the Court dismisses the official-capacity claims against Gillespie because Metro is also a named defendant.

Government officials may be sued in their personal capacity under § 1983 for money damages. *See Hafer*, 502 U.S. at 31. Individual officials enjoy qualified immunity from suit unless (1) the official violated the plaintiff's constitutional right; and (2) that right was clearly established. *C.B. v. City of Sonora*, 730 F.3d 816, 825 (9th Cir. 2013) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)).

> A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.

*Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011).

To be liable under § 1983, a defendant must have personally participated in the alleged misconduct. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There is no *respondeat superior* liability under § 1983. *Id.* Thus, a supervisor cannot be liable merely because a subordinate engaged in illegal behavior. Rather, "[a] supervisor is liable under § 1983 for a subordinate's constitutional violations 'if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them.'" *Maxwell v. County of San Diego*, 708 F.3d 1075, 1086 (9th Cir. 2013) (quoting *Taylor*, 880 F.2d at 1045).

### 2.    Entity Liability

The Supreme Court has held that local government units are "persons" for purposes of § 1983. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690 (1978). A plaintiff may establish *Monell* liability by showing that:

> (1) conduct pursuant to an official policy inflicted the injury; (2) the constitutional tort was the result of a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (3) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (4) an official with final policy-making authority delegated that authority to, or ratified the decision of, a subordinate.

*Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008) (internal quotation marks and citations omitted). "Generally, a municipality is liable under *Monell* only if a municipal policy or custom was the

'moving force' behind the constitutional violation. . . . In other words, there must be 'a direct causal link between a municipal policy or custom and the alleged constitutional deprivation.'" *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d, 950, 957 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)).

The Ninth Circuit recently held that private entities are subject to liability under the *Monell* framework. *Tsao v. Desert Palace*, 698 F.3d 1128, 1139 (9th Cir. 2012). "To make out a claim against [a private entity] under *Monell*, [plaintiff] must show that (1) [the private entity] acted under color of state law, and (2) if a constitutional violation occurred, the violation was caused by an official policy or custom of [the private entity]." *Id.*

### 3. Statute of Limitations

Section 1983 does not contain its own statute of limitations. Therefore, the federal courts borrow the statute of limitations for § 1983 claims applicable to personal injury claims. *Wilson v. Garcia*, 471 U.S. 261, 279–80, (1985); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) (citation omitted). In Nevada, the statute of limitations for § 1983 actions is two years. NRS § 11.190(4)(e); *Perez v. Seevers*, 869 F.2d 425, 426 (9th Cir. 1989). Under federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991). However, federal courts borrow all applicable tolling provisions from state law. *Id.*

"A statute of limitation defense may be raised by a motion to dismiss if the running of the limitation period is apparent on the face of the complaint." *Vaughan v. Grijalva*, 927 F.2d 476, 479 (9th Cir. 1991); *see also Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). Generally, the issue of equitable tolling cannot be decided on a motion to dismiss. *See Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206 (9th Cir. 1995); *Cervantes v. City of San Diego*, 5 F.3d 1273, 1276 (9th Cir. 1993).

### C. Legal Standard — Constitutionally Adequate Medical Care

"Claims by pretrial detainees are analyzed under the Fourteenth Amendment Due Process Clause, rather than the Eighth Amendment. . . . Because pretrial detainees' rights under the Fourteenth Amendment are comparable to prisoners' rights under the Eighth Amendment,

however, we apply the same standards." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998); *Clouthier v. Cnty. of Contra Costa*, 591 F.3d 1232, 1241–44 (9th Cir. 2010). "To determine whether the conditions of . . . confinement constitute[] cruel and unusual punishment, [the court] must assess whether [the detainee] was deprived of the 'minimal civilized measure of life's necessities.'" *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)). "If so, a prison official may be held liable if he acted with 'deliberate indifference' to a substantial risk of serious harm. Mere negligence is not sufficient to establish liability." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).

"[D]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "The state of mind for deliberate indifference is subjective recklessness." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

> But the standard is less stringent in cases involving a prisoner's medical needs . . . because the State's responsibility to provide inmates with medical care ordinarily does not conflict with competing administrative concerns. . . . Similarly, in deciding whether there has been deliberate indifference to an inmate's serious medical needs, we need not defer to the judgment of prison doctors or administrators.

*Id.* (internal quotation marks and citations omitted).

"A 'serious' medical need exists if the failure to treat the condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) (quoting *Gamble*, 429 U.S. at 104), *overruled on other grounds by WMX Tech., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

> The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a "serious" need for medical treatment.

*Id.* at 1059–60.

"More generally, deliberate indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care. . . . A prisoner need not show his harm was substantial." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citations

omitted). However, "a plaintiff's showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference." *Id.* (internal quotation marks and citation omitted).

### D. The Government Motion to Dismiss (Dkt. No. 6)

#### 1. Statute of Limitations

The running of the limitations period is not apparent on the face of the Complaint. In his opposition, Repass vaguely alludes to incidents involving the state court and state officials who allegedly interfered with his ability to file the Complaint sooner. (Dkt. No. 19 at 5.) As Repass has the opportunity to amend his Complaint, the Court declines to rule now on issues of accrual and tolling. *See Vaughan*, 927 F.2d at 479–80.

#### 2. Clark County Detention Center

The parties agree that CCDC, as a physical object and not a legal entity, is not a proper defendant. Therefore, the Court dismisses all claims against CCDC.

#### 3. Sheriff Douglas Gillespie

##### a. Official Capacity

As set forth above, the Court dismisses the official-capacity claims against Gillespie as redundant with the claims against Metro.

##### b. Individual Capacity

Repass fails to plead that Gillespie participated in or directed the alleged violations or that he knew of the violations and failed to act to prevent them. *See Maxwell*, 708 F.3d at 1086. Based on the mere identification of Gillespie as the government official ultimately in charge of all operations at CCDC, it is possible, but not plausible, that Gillespie personally participated in the alleged violations as required for liability under § 1983. *Iqbal*, 556 U.S. at 679. Thus, the Court dismisses the individual-capacity claims against Gillespie.[2] However, the Court grants leave to Repass to file an amended complaint with additional factual allegations against Gillespie, should such facts exist.

---

[2] The Court need not determine now whether Gillespie enjoys qualified immunity.

### 4. Las Vegas Metropolitan Police Department

Repass fails to plead that any Metro policy or Metro custom was the "moving force" behind the alleged constitutional violations. *Villegas*, 541 F.3d at 957. Repass, however, need not identify the precise policy or custom at issue, as the Court imagines it would be quite difficult for an inmate to obtain copies of all of Metro's healthcare-related policies or to identify the unwritten customs that drive the provision of healthcare at CCDC. Despite Naphcare's role as the contracted provider of medical services at CCDC, Metro still has the "constitutional duty to provide adequate medical treatment to those in its custody[.]" *West v. Atkins*, 487 U.S. 42, 56 (1988); *Georgia v. McCollum*, 505 U.S. 42, 53 (1992) ("The State cannot avoid its constitutional responsibilities by delegating a public function to private parties.").

Repass's allegations are sufficient to render it plausible that Metro's policy, custom, or practice caused Metro to be deliberately indifferent to Repass's serious medical needs. His injuries were certainly serious, as he had been shot multiple times and ultimately required titanium pins to repair his arm. Also, he alleges three entry wounds and three exit wounds from the gunshots, injuries which would have been readily apparent. The significant alleged delay in treatment of his arm—eight months—"is not the type of thing that goes unnoticed by supervisors and policy making officials." *Plonsky*, 2011 WL 2680733 at *3. In addition, he pleads that (i) he was whisked back to CCDC only hours after major surgery on his arm at University Medical Center; (ii) he was never provided treatment for the shotgun blast to his back; and (iii) he was not given proper follow-up care after the wound in his left side re-opened and became infected. Whether Repass prevails on his claims is yet to be determined, but he has pled enough to open the doors of discovery.

### E. Naphcare's Motion to Dismiss (Dkt. No. 9)

#### 1. Statute of Limitations

Naphcare argues the statute of limitations for claims against it should be one year instead of two, based on NRS § 41A.097(2).[3] Naphcare's argument is fundamentally flawed, however.

---

[3] In relevant part, NRS § 41A.097(2) provides:

Repass does not charge Naphcare with medical malpractice, but rather deliberate indifference to his serious medical needs in violation of the Fourteenth Amendment's Due Process Clause. The Court refuses to apply the medical malpractice statute of limitations to Repass's constitutional claims against Naphcare. Instead, the Court applies the general statute of limitations for personal injury actions under NRS § 11.190(4)(e). *Plonsky v. Las Vegas Metro. Police Dep't*, No. 2:11-cv-00026, 2011 WL 2680733 at *3 (D. Nev. 2011) (Hunt, J.) (holding that the medical malpractice statute of limitations does not apply to claims of deliberate indifference to serious medical needs).[^]

### 2.     Qualified Immunity

The § 1983 claim against Naphcare is governed by the *Monell* framework for municipal liability. *Tsao v. Desert Palace*, 698 F.3d 1128, 1139 (9th Cir. 2012). Municipalities are not entitled to a qualified-immunity defense. *Eng v. Cooley*, 552 F.3d 1062, 1064 n.1 (9th Cir. 2009); *see* 2 RODNEY A. SMOLLA, FEDERAL CIVIL RIGHTS ACTS § 14:58 (3d ed. 2013). The rationale is that "there is no tradition of immunity for municipal corporations, and neither history nor policy supports a construction of § 1983 that would justify" according qualified immunity to municipalities. *Owen v. City of Independence, Mo.*, 445 U.S. 622, 638 (1980). The Court is unaware of a historical basis to grant immunity to private corporations in this context, and Defendants have provided no legal support for their contention that private corporations are entitled to qualified immunity. Therefore, Naphcare is not entitled to qualified immunity.

---

[A]n action for injury or death against a provider of health care may not be commenced more than 3 years after the date of injury or 1 year after the plaintiff discovers or through the use of reasonable diligence should have discovered the injury, whichever occurs first, for:

    (a) Injury to or the wrongful death of a person occurring on or after October 1, 2002, based upon alleged professional negligence of the provider of health care;

    (b) Injury to or the wrongful death of a person occurring on or after October 1, 2002, from professional services rendered without consent; or

    (c) Injury to or the wrongful death of a person occurring on or after October 1, 2002, from error or omission in practice by the provider of health care.

### 3. *Monell* liability

Repass does not specifically identify any Naphcare policy or custom that caused his alleged constitutional violations. Nor does he identify any Naphcare employees "whose acts fairly represent official policy such that" their actions constituted official policy. *Price*, 513 F.3d at 966. However, for the reasons set forth above as to the *Monell* claim against Metro, the *Monell* claim against Naphcare is sufficiently pled.

### 4. Punitive Damages

Local governments are immune from punitive damages under § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259–60 (1981) ("[A] municipality, like a private corporation, was to be treated as a natural person subject to suit for a wide range of tortious activity, but this understanding did not extend to the award of punitive damages . . . against a municipal corporation."). In *Tsao*, the Ninth Circuit held that private entities acting "under color of state law" can be liable for constitutional violations under the *Monell* framework. 698 F.3d at 1139. However, *Tsao* did not address whether private entities enjoy the same immunity from punitive damages under *Fact Concerts* that local governments do.

In *Fact Concerts*, the Supreme Court recognized that local governments were almost universally immune from punitive damages at common law. 453 U.S. at 259–60. The predominant reason is that "officials' malice should not be attributed to the taxpaying citizens of the community." *Id.* at 260. "[S]uch awards would burden the very taxpayers and citizens for whose benefit the wrongdoer was being chastised." *Id.* at 263. If a private entity is forced to pay punitive damages, however, the punishment would be borne by its owners (e.g., shareholders) rather than by the taxpayers.

In light of this crucial distinction, Naphcare is not immune from punitive damages. *See Campbell v. City of Philadelphia, Dep't of Human Servs.*, CIV A. No. 88-6976, 1990 WL 102945 at *6 (E.D. Pa. 1990) ("Because Easton is a private entity, the policy behind prohibiting recovery of punitive damages against a municipality does not apply.").

"Under § 1983, punitive damages are proper either when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the

constitutional rights of others." *Neveu v. City of Fresno*, 392 F. Supp. 2d 1159, 1183 (E.D. Cal. 2005) (citing *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Larez v. City of Los Angeles*, 946 F.2d 630, 639 (9th Cir.1991)).

The alleged facts are sufficient to support a reasonable inference that Naphcare acted with reckless or callous indifference to Repass's constitutional right to adequate medical care. He allegedly went for eight months without treatment to his left arm, was rushed back to CCDC only hours after major surgery to that arm, and the gunshot wound in his left side that re-opened and became infected was not promptly treated. The claim for punitive damages against Naphcare survives.

### F. Repass's Motion to Amend Complaint to Substitute Dr. Sylvain (Dkt. No. 28)

Defendants have not opposed Repass's motion to amend the Complaint to substitute Dr. G. Mark Sylvain for Dr. Wolff. Consequently, the Court grants this motion. *See* Local Rule 7-2(d) ("The failure of an opposing party to file points and authorities in response to any motion shall constitute a consent to the granting of the motion.").[4]

### G. Defendants' Motion to Strike Repass's Surreply (Dkt. No. 24)

Repass's supplement (Dkt. No. 22) is effectively a surreply filed without permission from Defendants and without leave of court. Even if the Court interpreted the surreply as inherently a motion for leave to file a surreply, the Court would deny that motion. Repass argues in the surreply that the one-year statute of limitations for medical malpractice is inappropriate for his claims and that Defendants delayed his treatment in an effort to pass on the medical costs to the Nevada Department of Corrections in the event Repass were convicted and sent to state prison. Repass has raised these arguments in prior filings. The Court grants Defendants' motion to strike (Dkt. No. 24) because the surreply is redundant. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010).

---

[4] Even in the absence of this motion, the Court would have dismissed all claims against Dr. Wolff because Repass failed to serve process on Dr. Wolff, as noted in the Court's "Notice Regarding Intention to Dismiss Pursuant to Rule 4(m)" of May 30, 2013. (Dkt. No. 27.)

### III. CONCLUSION

In accord with the above, the Court hereby ORDERS:

1. The Government's motion to dismiss (Dkt. No. 6) is GRANTED IN PART and DENIED IN PART. The official-capacity claims against Gillespie are DISMISSED WITH PREJUDICE. The individual-capacity claims against Gillespie are DISMISSED WITHOUT PREJUDICE. All claims under the Eighth Amendment are DISMISSED WITH PREJUDICE. All claims against CCDC are DISMISSED WITH PREJUDICE. All other claims survive.

2. Naphcare's motion to dismiss (Dkt. No. 9) is GRANTED IN PART and DENIED IN PART. All claims under the Eighth Amendment are DISMISSED WITH PREJUDICE. All other claims survive.

3. Repass's motion to amend (Dkt. No. 28) is GRANTED. All claims against Dr. Wolff are DISMISSED.

4. Defendants' motion to strike (Dkt. No. 24) is GRANTED.

5. Repass is granted leave to file an amended complaint. He may replead his personal-capacity claims against Gillespie if sufficient facts exist. If Repass does replead these claims, Repass must allege facts that support a reasonable inference that Gillespie personally participated in the alleged constitutional violations, directed the violations, or knew of the violations and failed to prevent or to stop them. Repass may include new claims against Dr. G. Mark Sylvain.

6. Within seven days of the entry of this Order, Defendants shall inform the Court whether Repass is still in custody. If Repass is in custody, Defendants shall serve this Order on Repass and, within 14 days of the entry of this Order, file proof of service with the Court. If Repass is not in custody, the Court will serve this order via First Class Mail at the address on file with the Court.[5]

---

[5] The Court's prior attempt to serve Repass at the following address in November 2013 failed:

Ryan Repass – 79194
Carlin Conservation Camp
P.O. Box 1490
Carlin, NV 89822

(Dkt. No. 31, mail returned as undeliverable).

7. If Repass does not file an amended complaint within 60 days after the date of service of this Order, the Court will dismiss this case without prejudice. *See* Local Rule of Special Proceedings and Appeals ("LSR") 2-2 ("The plaintiff shall immediately file with the Court written notification of any change in address. . . . Failure to comply with this Rule may result in dismissal of the action[.]").

DATED this 29th day of January, 2014.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE